## BOND v. SEYMOUR.

1. FRAUD—JURY.—In the case of a bill of sale or chattel mortgage to secure a debt, where fraud is alleged against it as an extrinsic fact, the question of fraud must be submitted to and passed upon by the jury.
2. EXEMPTION—FRAUD.—A transfer or conveyance of property exempt from levy and sale on execution, cannot be considered fraudulent as against creditors, though, but for such exemption, it might have been so considered. *Dreutzer v. Bell,* 11 Wis. 114.

(1 *Chand.* 40.)

ERROR to the late District Court for *Racine* County.

This was an action of replevin, brought by the plaintiff in error against the defendant in error for the *detention* of a quantity of household property, a part of which was exempt from levy and sale on execution. The defendant in error pleaded that he did not detain the goods and chattels in question.

The case was tried at the April term of the late territorial district court for the county of Racine, before MILLER, J., and under his charge the jury gave a verdict for the defendant in error.

. On the trial it was proved or admitted, that one Ehle had obtained a judgment against one Sanford, on which was due the sum of sixty-six dollars ; that an execution issued upon this judgment was levied upon the property in question as the property, goods and chattels of Sanford, by the defendant in error, who was a constable ; that the property so levied upon was in the possession of the defendant in error subsequently to the time of the levy, and was demanded by the plaintiff in error of the defendant in error, and that he refused to deliver it up.

The plaintiff also produced on the trial the paper or mortgage mentioned in the opinion of the court, and proved that the same was executed by the said Sanford and placed on file in the proper office before the levy made by the defendant in error, and was so on file at the time of the levy.

It was also proved or admitted that the bill of sale, also described in the opinion of the court, was executed by Sanford, and the property therein mentioned turned out to the plaintiff in error, was not taken into permanent possession, but was afterwards retained in possession of said Sanford, and it also appeared that some part of the property embraced in the respective papers was exempt from levy and sale on execution.

The charge of the judge to the jury sufficiently appears from the opinion of the court, as does also the exceptions taken thereto by the defendant's counsel.

*W. Bond*, for the plaintiff in error.

*E. W. Evans*, for the defendant in error.

JACKSON, J.    This was an action of replevin, commenced at the October term of the district court for Racine county,

by *Thomas D. Bond*, the plaintiff in error, against *Epaphro Seymour*, defendant in error, a constable of said county, for wrongfully detaining the property mentioned in the writ of replevin, by virtue of an execution issued from a justice of the peace in favor of Nicholas Ehle against William G. Sanford.   On the trial of the cause, at the April term, 1848, of the district court, it was proven that the property replevied was in the possession of the defendant in error after being taken on execution, and that possession of the same was demanded by the plaintiff and refused by the defendant before the writ of replevin issued.   It is admitted that the plaintiff offered in evidence on the trial a paper writing, containing a list of personal property, to which was append the following defeasance :

" The above is given for the security of two notes *Thomas D. Bond* holds against me, dated April 26, 1847.   He to take possession at any time he may think his security requires it."

This writing, it is also admitted, was executed by Sanford and placed on file in the town clerk's office of Southport before the levy made by defendant, and continued on file at the time of the levy ; that a bill of sale was executed by Sanford to the plaintiff, purporting to convey the same property described in the other instrument, and that the property mentioned in the writ of replevin was turned out to the plaintiff under said bill of sale, in the presence of witnesses, to secure payment of about $60 ; that the property replevied remained in the house of Sanford after it was so turned out to the plaintiff ; and that it consisted of the household furniture of Sanford, and that he was in embarrassed circumstances ; that some four days after the sale to the plaintiff, and previous to the levy, the plaintiff entered the house of Sanford and took possession of the property described in the writ and delivered the same into the possession of Mrs. Sanford, the mother of said Sanford, then an occupant of his

house, and requested Mrs. Sanford to take charge of the same for this plaintiff; Mrs. Sanford living at the time with her son, in whose house the property remained; that the levy under said execution was made some two or three days after the conversation between the plaintiff and Mrs. Sanford, and that at the time the said property was delivered to Mrs. Sanford, in the manner mentioned, William G. Sanford was absent from the town of Southport; that part of the property mentioned in said bill of sale consisted of the portraits of Sandford and wife, and that said portraits were levied upon under Ehle's execution, and that he became the purchaser.

Upon this evidence the court charged the jury as follows :
1. That as there was no covenant of consideration mentioned in said mortgage, it was void, and no property passed to the plaintiff.

2. That without delivery of the property, or change of possession, by said bill of sale no property passed to the plaintiff.

3. That the delivery of the property to plaintiff by Sanford, on the 8th day of May, under said bill of sale, was inoperative and void, the property remaining in the house then occupied by said Sanford.

4. That all the proceedings in the house of said Sanford in reference to the property were fraudulent and void, unless there was an *actual removal* of the property from the premises, or an actual change of possession.

5. That, under the circumstances, Sanford alone could take advantage of the levy upon exempted property, and that the vendee of Sanford, under said bill of sale and mortgage, could not recover possession of said exempted property from the judgment creditors of Sanford.

To these several instructions of the court the counsel for the plaintiff excepted, and also asked the court to give the jury the following instructions, which were refused :

1. That if the said chattel mortgage was properly executed and placed on file in the town clerk's office, the plaintiff held

by paramount title, and could not be molested by the judgment creditors of Sanford.

2. That if the property was delivered to the plaintiff under said bill of sale, and said property was accepted by the plaintiff and by him delivered to one Mrs. Sanford, as plaintiff's agent, possession by Mrs. Sanford was the possession of the plaintiff, and under the circumstances the plaintiff was excused from absolutely removing the property.

3. That if any portion of the property was exempt by law from execution, that the creditors of Sandford had no right to levy upon the same, and if the remainder did not exceed $50 in value, that was all exempt from execution, and consequently the levy of defendant was illegal.

The jury, under the instructions given by the court, returned a verdict for the defendant for $66.65, the value of the property, and $3.89 damages, with costs of suit, and judgment was rendered accordingly ; to reverse which, a writ of error is brought to this court.

Although several important legal questions arise in this cause, yet the disposition to be made of it must mainly depend upon the construction to be given to our statute of frauds. In most of the states of the Union a similar statute exists, under which there have been conflicting adjudications. Not unfrequently a capricious rule of construction has prevailed, which has deprived parties litigant of its intended remedial and protective provisions. The later decisions, however, under the statute, have been more in conformity both with its letter and its spirit. Whether this statute is founded upon a wise or an unwise policy, it is not the province of courts either to inquire or to decide ; but, like all other statutes, it should receive a fair and reasonable construction.

We cannot but regard it as an unwarrantable assumption in courts to attempt, by judicial construction, to impair the force or modify the provisions of an act of the legislature.

In reference to the instrument in writing submitted to the jury upon the trial, two questions arise : Is it a *bill of sale*, or is it a *chattel mortgage ?* If it be a bill of sale, then, under our statute, unless such sale " be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, it shall be *presumed* to be fraudulent and void as against the creditors of the vendor, or subsequent purchasers. in good faith, and shall be *conclusive* evidence of fraud, unless it shall be made to appear, on the part of persons claiming under such sale, that the same was made in good faith, and without any intent to defraud such creditors or purchasers. Rev. Stat. 163, § 5.

Under this provision of the statute, it is obvious that while the retaining possession by the vendor of the property sold, raises a *presumption* of fraud, yet that is a presumption which is susceptible of being rebutted, on the part of the persons claiming under such sale, by evidence that it was made in good faith, and without any fraudulent intent ; and that it is the duty of the court to submit the *question of fraud to the jury*, who are to determine, under all the circumstances of the case, as they shall be disclosed by evidence, whether or not such presumption has been sufficiently rebutted to give a *bona fide* character to the transaction.    23 Wend. 653 ; 1 Hill, 438 ; 26 Wend. 511 ; 1 Hill, 467.

If the instrument referred to be a chattel mortgage, then, " unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded in the office of the register of deeds where the mortgagor resides," or " in the office of the town clerk where the mortgagor executing the same resides ; or, in case he is a non-resident of the territory, in the town where the property mortgaged may be at the time of executing the same," it will be absolutely void as against creditors.    Rev. Stat. 164, § 9 ; Laws of 1843, 42, § 25.

If, however, the possession of such mortgaged property be delivered to, or retained by the mortgagee, or if it be recorded or filed in the manner prescribed by our statutes, in case the mortgagor retains possession. then, in either case, such mortgage is *prima facie* valid ; and it devolves upon the party who seeks to impeach it, on the ground of fraud, to show such fraud affirmatively.

And here, the mortgage having been placed on file, the question of fraud, as in the case of a bill of sale, is one for the jury. Rev. Stat. 164. In either point of view, therefore, whether we regard the instrument offered in evidence upon the trial as a bill of sale, or as a chattel mortgage, the court clearly erred in not submitting the question of fraud to the jury.

We are inclined to the opinion, however, that the instrument referred to should be treated as a chattel mortgage.

Again, a part of the property was exempt by law from execution ; and as it was not the subject of levy, it could not be conveyed in fraud of creditors. The charge of the judge, therefore, on this branch of the case, was erroneous, and may have misled the jury. We deem it unnecessary to examine the other grounds of error assigned, as those we have already considered are sufficient to require a reversal of the judgment.

The judgment of the court below is therefore reversed with costs.

Stow, C. J., concurred in the reversal of the judgment, on the ground that a part of the property being exempt from execution, was not the subject of a fraudulent sale as against judgment creditors; but dissented from the views and principles of the opinion of the court, especially from that part of the opinion which relates to the principle governing and controlling the effect of simple bills of sale; and holding that a bill of sale of chattels without a change of

possession, in order to vest an interest therein in the vendee, was determined by the statute to be fraudulent as against creditors, unless evidence was given by the vendee of the *bona fides* of the transaction, and that he had been unable to discover any evidence given in the case made up, which tended to that result.